# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 19-667V
(Filed: March 21, 2024*)

|  |  |
|---|---|
| **GEOFF MEAD**, as *parent and natural guardian of minor child M.M.*, | ) ) ) ) |
| *Petitioner,* | ) ) |
| v. | ) ) ) |
| **SECRETARY OF HEALTH AND HUMAN SERVICES**, | ) ) ) ) |
| *Respondent.* | ) ) ) |

*Patricia A. Finn*, Patricia Finn Attorney P.C., Nanuet, NY, for petitioner.

*Kimberly S. Davey*, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Julia M. Collison*, Assistant Director, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC.

**OPINION AND ORDER**

***BONILLA, Judge***.

Petitioner Geoff Mead, parent of the minor child identified herein as M.M., seeks review of a decision of the United States Court of Federal Claims Office of Special Masters (OSM) denying attorney's fees and costs under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. § 300aa-15(e)(1)(B). Mr. Mead does not, however, challenge the OSM decision denying compensation and

---

* This decision was initially filed under seal on March 6, 2024, in accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims, to allow the parties to propose redactions based upon privacy concerns. No proposed redactions were filed.

dismissing M.M.'s underlying vaccine injury claim for failing to present minimally competent evidence establishing the claimed diagnosis as well as a plausible temporal relationship between the vaccine and the injury alleged.

The Court is struck by the "all or nothing" approach to the award of attorney's fees and costs adopted by the special master, effectively reading out the term "reasonable" from the compensation statute. To be clear, certain issues–and perhaps the entire matter–presumably should have been conceded (or abandoned) as the special master judiciously pressed for cognizable evidence. But that does not automatically translate to a finding that the case should not have been brought or pursued until the point at which it became increasingly clear the claim lacked merit. The special master failed to distinguish between the filing of the petition, the initial stages of litigation, and the continued pursuit of the matter through dismissal. Moreover, in ordering petitioner's counsel to refund to her client all monies paid– including the court filing fee and initial expert witness retainer–the special master effectively sanctioned counsel for filing a claim which is not alleged to have been brought in bad faith.

The Vaccine Act requires a more balanced approach that furthers Congress' codified intent: encouraging inoculated individuals to raise good faith concerns about vaccines that may have injured them. In developing this statutory scheme, Congress created a mandatory fee-shifting statute where compensation is awarded and a permissive fee-shifting statute even if the claim ultimately falls short. The contemplated award of "reasonable" attorney's fees and expenses necessarily extends beyond assessing proffered hourly rates and billable hours and, relevant here, recovery also must be temporally measured as the asserted claims evolve from initial filing throughout the pendency of the litigation.

For this reason, this matter is remanded to the special master to assess the relative merit of the petition at filing and to award reasonable attorney's fees and costs based upon a real-time assessment of counsel's litigation of the matter and continued due diligence rather than a retrospective analysis of the end result. Accordingly, Mr. Mead's motion is GRANTED, the OSM decision on attorney's fees and expenses is VACATED, and this matter is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

### I. Medical History

On May 16, 2016, during his annual wellness visit, then twelve-year-old M.M. received a dose of Trumenba Meningococcal Group B Vaccine, developed to prevent meningitis B. According to his medical records, no other vaccines or medications were administered during this pediatric visit and M.M.'s physical examination results were normal. Within an hour of receiving the vaccine, M.M. developed a fever and

later complained of numbness in his arms and legs and feeling lethargic.  The next day, M.M. returned to his pediatrician and reported the following symptoms: slurred speech, fever, severe headache, dizziness, burning sensation on his skin, tingling all over his body, and numbness and weakness in his limbs.  M.M.'s treating physician confirmed the fever, but otherwise characterized the physical examination as "unremarkable" and the neurological examination as "completely normal," remarking: "[M.M.] is having a reaction to the [T]rume[n]ba vaccine which should last no more tha[n] 24-36[]hrs."  ECF 11-1 at 2.

Three days later, on May 19, 2016, M.M. was taken to the emergency room with complaints of a stiff neck and paresthesia as well as his parent's concerns of Guillain-Barré syndrome (GBS).  After consulting with the attending emergency room physician–who reportedly "found [the] child to not be in distress"–M.M.'s pediatrician referred the family to a neurologist.  ECF 21-1 at 111.  In the days that followed, M.M. underwent a neurologic exam, an electroencephalogram (EEG), and magnetic resonance imaging (MRI) of his brain.  Although M.M. continued to report lingering symptoms, the results of his neurologic exam, EEG, and MRI were normal.  The treating neurologist listed "Reaction to vaccine meningococcal (5/16)" as his principal impression.  *Id.* at 109.

In the ensuing months, M.M.'s reported symptoms and physical limitations ebbed and flowed but otherwise improved slowly.  Concomitantly, M.M. experienced a series of adverse reactions to medications and treatments for preexisting seasonal allergies and eczema.  In the interim, on May 30, 2017, M.M. returned to the emergency room complaining of weakness and numbness in his legs and torso and was immediately transferred to a local children's hospital.  M.M. was subsequently discharged with normal reflex test results and decreased light touch sensation in all four extremities but no conclusive diagnosis.  Throughout the balance of 2017, and in 2018 and 2019, M.M. regularly consulted with medical professionals in search of a diagnosis and treatment for his continuing ailments.  All neurological test results were deemed normal.

## II. OSM Proceedings

On May 6, 2019, Mr. Mead filed a petition for monetary compensation under the Vaccine Act, 42 U.S.C. § 300aa-1 to -34.  In his petition, Mr. Mead alleged the meningococcal vaccine administered to his son on May 16, 2016, caused M.M. to suffer chronic inflammatory demyelinating polyradiculoneuropathy (CIDP). A month later, Mr. Mead began filing M.M.'s relevant medical records and other documents in support of his claim and continued supplementing those filings at OSM's direction through December 2019.

Beginning in or about late January 2020, respondent began challenging petitioner's claims of CIDP, noting the absence of a documented diagnosis. Respondent further contested the temporal and causal links between M.M.'s vaccine

and his claimed injury. Throughout 2020, particularly after the onset of the Coronavirus disease 2019 (COVID-19) pandemic in March 2020, petitioner's counsel sought a series of unopposed extensions of time to consult with and retain an expert witness. On February 2, 2021, counsel filed an expert report authored by Yehunda Shoenfeld, MD, wherein the expert proffered: "M.M. at the age of 12.5 [years old] received Trumenba (Serogroup B Meningococcal Vaccine), and eventually developed GBS / CIDP." ECF 46-1 at 4. Counsel simultaneously filed medical literature.

After reviewing these filings, the special master convened a status conference on February 24, 2021 to "discuss[] with petitioner's counsel various deficiencies and areas lacking persuasiveness in Dr. Shoenfeld's report, which necessitate an[] additional report addressing diagnosis, theory, and timing." ECF 49. Rather than file the requested supplemental report from Dr. Shoenfeld, on March 15, 2021, petitioner's counsel tendered the following medical opinion from Avinoam Shuper, MD: "what MM had is inflammatory neuropathy which resembled GBS in the beginning but progressed to CIDP." ECF 50-1 at 14. Citing familiar gaps in Dr. Shuper's proffer, the special master again directed petitioner to file the requested supplemental report of Dr. Shoenfeld as well as the medical literature relied upon by Dr. Shuper. In response, on May 18, 2021, petitioner's counsel filed a one-sentence letter from Dr. Shoenfeld stating: "I fully agree with [Dr.] Shuper's final diagnosis, as he is the clinical expert in this case." ECF 56-1. Over the next ten months, petitioner's counsel was afforded at least two more opportunities–including in response to an October 15, 2021 order to show cause–to produce an expert report and other medical and scientific evidence evincing a theoretically viable and minimally competent case to warrant continued proceedings. Counsel's efforts fell short, resulting in the June 17, 2022 dismissal of Mr. Mead's petition.

On December 15, 2022, petitioner's counsel filed an application for attorney's fees and costs in the aggregate amount of nearly $70,000. In a decision dated October 3, 2023, the special master denied the remuneration request and further directed that counsel return to Mr. Mead the $400 remitted for the court filing fee and $2,000 initial expert witness retainer. Finding "Mr. Mead has not established a reasonable basis for the claim presented in the petition," the special master concluded "he is not eligible for an award of attorney's fees and costs." ECF 80 at 2. In support, the special master reiterated the bases for dismissing the underlying petition: Mr. Mead failed to document an actual CIDP diagnosis and, more fundamentally, present a scientifically acceptable explanation for CIDP striking within hours of the administration of a vaccine. Regarding the $2,400 refund, the special master cited 42 U.S.C. § 300aa-15(e)(3), which generally prohibits attorneys from charging fees–inclusive of services provided and litigation expenses–over and above those awarded under the Vaccine Act. This appeal followed.

4

## DISCUSSION

I. **Standard of Review**

In reviewing a Vaccine Act decision, this Court may

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2). The United States Court of Appeals for the Federal Circuit clarified the applicable standards of review as follows: findings of fact are reviewed under the arbitrary and capricious standard; discretionary rulings are reviewed under an abuse of discretion standard; and legal conclusions are reviewed de novo under the "not in accordance with law" standard. *Turner v. Sec'y of Health & Hum. Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001) (citing *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)).

II. **Attorney's Fees and Costs**

The Vaccine Act and the National Childhood Vaccine Injury Compensation Program it created aim to provide prompt and assured compensation to individuals injured by routinely administered vaccines, doing so with both certainty and generosity. *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012) (citing H.R. Rep. No. 99-908, at 3 (Sept. 26, 1986), *reprinted in* 1986 U.S.C.C.A.N. 6344). To this end, Congress facilitated the retention of qualified counsel by enacting a mandatory fee-shifting statute in cases where compensation is awarded and, relevant here, providing for the discretionary reimbursement of reasonable attorney's fees and litigation expenses where claims fall short. *Id.*

Indeed, addressing matters where the petitioner is ultimately not successful, Congress provided:

> If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was

> brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa-15(e)(1)(B). As codified, the test is twofold: "[1] the petition was brought in good faith *and* [2] there was a reasonable basis for the claim for which the petition was brought." *See id.* (emphasis added); *e.g., Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). The "good faith" inquiry is subjective whereas the "reasonable basis" assessment is objective. *Simmons*, 875 F.3d at 635. Notably, "even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees." *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).

As the Secretary readily acknowledges, the petition was filed in good faith. Thus, the principal issue presented is whether Mr. Mead objectively presented a reasonable basis for his claim. For the following reasons, the Court finds OSM's blanket denial of attorney's fees and costs is arbitrary, capricious, an abuse of discretion, and contrary to law. Accordingly, the matter is remanded to the special master for further consideration consistent with this opinion.

The burden of proof necessary to establish a reasonable basis for the recoupment of attorney's fees and litigation expenses "is lower than the preponderant evidence standard required to prove entitlement to compensation." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (citations omitted). All that is required is "more than a mere scintilla" of objective evidence to support the claim. *Id.* A court's consideration of a vaccine claim's evolution and maturation from the initial filing of a petition through final judgment is imperative to this inquiry. *See James-Cornelius*, 984 F.3d at 1379 ("[The] absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts."). That analysis is critically absent here.

At the time Mr. Mead's petition was filed, this much was clear: on May 16, 2016, M.M. received a dose of the Trumenba Meningococcal Group B Vaccine and, shortly thereafter, he began suffering increased physical ailments. Twenty-four hours later, M.M. returned to his pediatrician, who linked the vaccine to his reported symptoms. Within seventy-two hours, his condition reportedly worsened and was so concerning that M.M.'s parents brought him to the hospital. The treating physician similarly pointed to the vaccine as the likely cause of M.M.'s reported symptoms. On June 28, 2016, a pediatric neurologist examined M.M. and noted the following impressions:

1. Reaction to vaccine meningococcal (5/16)
2. Mild polyneuropathy

6

    3. Post viral malaise
    4. The symptoms have resolved
    5. Neurological exam is normal

ECF 11-3 at 1. Dr. Shuper subsequently opined that M.M.'s symptoms, including polyneuropathy, overlap with and can resemble both GBS and CIDP.[1] *See* ECF 50-1 at 14–17. As M.M.'s physical condition improved and worsened–prompting a second trip to the emergency room on May 30, 2017–he regularly consulted medical professionals over the next three years in search of a concrete diagnosis and effective treatment. It is also worth highlighting that Mr. Mead's petition was filed just ten days before the expiration of the thirty-six month statute of limitations for vaccine claims. *See* 42 U.S.C. § 300aa-16(a)(2).

    On remand, the special master must assess whether the objective evidence in the record satisfied the minimal threshold for filing the petition in the first instance. And, if so, the special master must then determine the reimbursable reasonable attorney's fees and costs related to and commensurate with the May 6, 2019 filing (e.g., attorney's fees incurred in researching and drafting the petition, collecting and filing accompanying medical records, court filing fees). Assuming Mr. Mead meets this burden, the special master must then engage in a temporal assessment of counsel's continued due diligence in the zealous representation of her client (i.e., retention of expert witnesses, researching and filing scientific literature, researching and drafting court filings). As made clear in the OSM entitlement decision, at some point in this litigation, it should have become clear that critical supporting evidence was lacking. At that point, counsel bore ethical duties to this Court and her client to pursue the specific information explicitly requested by the special master or concede the issues if none could be found. In failing to do either–resulting in the dismissal of Mr. Mead's petition–counsel rendered any claim for attorney's fees and costs from that point onward as definitionally and categorically unreasonable.

    As with the filing of the petition, the Court leaves to the special master to determine at what specific moment in this litigation counsel failed to comport with her obligations to the Court and her client. This incremental assessment is consistent with OSM's practice–sanctioned by the Federal Circuit–of interim awards of attorney's fees and costs particularly during prolonged litigations. *See Avera v. Sec'y of Health & Hum. Servs.,* 515 F.3d 1343, 1352 (Fed. Cir. 2008) ("Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."); *e.g., Smith v. Sec'y of Health & Hum. Servs.,* No. 18-43, 2020 WL

---

[1] "CIDP . . . is a rare neurological condition that causes worsening (progressive) muscle weakness, numbness and other symptoms. . . . CIDP is closely related to [GBS]. Healthcare providers consider CIDP to be the long-term form of GBS. GBS is a rare autoimmune condition in which your immune system attacks your peripheral nerves." *See* CLEVELAND CLINIC, https://perma.cc/3MNR-X26Z (last visited Mar. 6, 2024).

1243238 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Scott v. Sec'y of Health & Hum. Servs.*, No. 08-756, 2014 WL 2885684 (Fed. Cl. Spec. Mstr. June 5, 2014).

This approach also gives full meaning to the discretionary award of *reasonable* attorney's fees and costs. As noted above, the modifier "reasonable" denotes more than an assessment of an attorney's proffered hourly rate, number of hours expended, and litigation expenses incurred. The broader reading highlighted here–and not discernable in the OSM decision–requires a temporal examination of the nature and purpose of the claimed legal services and expenses to assess whether they were reasonably incurred *at the time* in pursuit of a potentially justifiable (as opposed to an ultimately justified) vaccine compensation claim. To do otherwise, as this case demonstrates, results in an "all or nothing" award of attorney's fees and costs where vaccine injury compensation is ultimately not awarded.

In performing the necessary due diligence prior to initiating litigation of a complex vaccine claim, counsel's gatekeeping function must not be relegated to a calculated risk of a retroactive pro bono assignment. The potential chilling effect is untenable and contrary to Congress' expressed intent in enacting the Vaccine Act and developing the comprehensive compensation program. To be clear, the special master correctly directed that Mr. Mead be reimbursed for his out-of-pocket expenses (i.e., $2,400). As noted *supra*, 42 U.S.C. § 300aa-15(e)(3) prohibits attorneys from charging fees–inclusive of services provided and litigation expenses–over and above those awarded under the Vaccine Act. Consistent with the foregoing, in (re)assessing whether any attorney's fees and costs were reasonably incurred in filing and litigating this vaccine claim and, thus, recoverable, the special master must decide whether the reimbursement of the court filing fee and initial expert witness retainer should be remitted to Mr. Mead from the Vaccine Injury Compensation Trust Fund or his counsel as previously ordered.

## CONCLUSION

For the foregoing reasons, petitioner's motion for review (ECF 82) is **GRANTED** and the decision denying attorney's fees and costs issued by the Office of Special Masters (ECF 80) is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

It is so **ORDERED**.

Armando O. Bonilla
Judge