# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 19-667V
(Filed: September 4, 2024[*])

|  |  |
|---|---|
| **GEOFFREY R. MEAD**, *as parent and natural guardian of minor child, M.M.,* | ) ) ) ) |
| *Petitioner,* | ) ) |
| v. | ) ) |
| **SECRETARY OF HEALTH AND HUMAN SERVICES**, | ) ) ) |
| *Respondent.* | ) ) ) |

*Patricia A. Finn*, Patricia Finn Attorney PC, Nanuet, NY, for petitioner.

*Kimberly S. Davey*, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent.  With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Voris E. Johnson, Jr.*, Assistant Director, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC.

## OPINION AND ORDER

***BONILLA, Judge***.

      This matter is back before the Court on cross-motions for review.  Earlier this year, the Court vacated the decision of the Office of Special Masters (OSM) denying attorney's fees and costs under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. § 300aa-15(e)(1)(B), and remanded the matter for further proceedings.  *Mead v. Sec'y of Health & Hum. Servs.*, 170 Fed. Cl. 435 (2024).  Initially ordering counsel to repay her client $2,400, the special master has now awarded

---

[*] This opinion was initially filed under seal on August 20, 2024, in accordance with Rule 18(b) of the Vaccine Rules of the United Stats Court of Federal Claims, to allow the parties to propose redactions based upon privacy concerns.  No proposed redactions were filed.

counsel $65,138.80.  The pendulum has swung too far the other way.  For the reasons that follow, respondent's motion for review is GRANTED-IN-PART and DENIED-IN-PART, petitioner's cross-motion for review is DENIED, OSM's remand decision awarding attorney's fees and costs is AFFIRMED-IN-PART and VACATED-IN-PART, and petitioner is awarded $41,044.29 in attorney's fees and costs.

## BACKGROUND[1]

On May 6, 2019, Geoffrey R. Mead, parent of a minor child identified herein as M.M., filed a petition for compensation under the Vaccine Act.  Mr. Mead alleged a May 16, 2016 meningococcal vaccine caused M.M. to suffer chronic inflammatory demyelinating polyradiculoneuropathy (CIDP).  Over the next three years, Mr. Mead pursued the claim before OSM, filing associated medical records and three expert reports.  Following several warnings culminating in a show cause order, the special master dismissed the petition on May 26, 2022, for failure to present a minimally persuasive case.

After effectively conceding the merits of the underlying claim,[2] Mr. Mead's counsel sought nearly $70,000 in attorney's fees and costs.  The special master denied the remuneration request and, citing 42 U.S.C. § 300aa-15(e)(3), directed counsel to return $2,400 to Mr. Mead for the court filing fee and an initial expert witness retainer.[3]  On review, this Court vacated the OSM decision and remanded the matter for a temporal reasonable basis analysis.  Specifically, the Court directed the special master to determine whether the evidence relied upon in support of the underlying vaccine injury claim satisfied the minimal threshold for filing the petition in the first instance and, if so, to perform a temporal assessment of the continued pursuit of compensation.

On remand, the special master found the vaccine claim was "no longer . . . justifiable by August 24, 2021," when OSM conducted a status conference to discuss the continued shortcomings in Mr. Mead's case.  ECF 94 at 24.  Nevertheless, the special master awarded attorney's fees and costs through the issuance of the October 15, 2021 show cause order "to be generous."  *Id.* at 25.  After deducting improperly claimed hours, reducing hourly rates sought, and discounting the expert witness fees submitted, OSM awarded Mr. Mead $39,792.45 in attorney's fees and costs for the underlying vaccine claim.  The special master then increased the award to $65,138.80 to reflect the attorney's fees deemed reasonably incurred in filing the motion for review ($12,010.50) and resulting remand proceedings ($13,335.85).

---

[1] The relevant background facts are included in the Court's March 6, 2024 published decision.  *Mead*, 170 Fed. Cl. at 437.  Only those material to the pending issues are repeated here.

[2] Mr. Mead did not seek review of the OSM dismissal.

[3] Section 300aa-15(e)(3) prohibits attorneys from charging fees–inclusive of services provided and litigation expenses–over and above those awarded under the Vaccine Act.

Both parties seek review of the OSM remand decision.  Respondent maintains the initial petition lacked a reasonable basis and, consequently, the special master's original decision denying the award of attorney's fees and costs was correct. Petitioner, in contrast, insists Mr. Mead is now entitled to $101,049.79, seeking to recover the nearly $70,000 in attorney's fees and costs originally claimed as well as over $30,000 purportedly expended on this "fees on fees" litigation.

## DISCUSSION

### I.   Standard of Review

In reviewing a Vaccine Act decision, this Court may

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).  The United States Court of Appeals for the Federal Circuit clarified the applicable standards of review as follows: findings of fact are reviewed under the arbitrary and capricious standard; discretionary rulings are reviewed under an abuse of discretion standard; and legal conclusions are reviewed *de novo* under the "not in accordance with law" standard.  *Turner v. Sec'y of Health & Hum. Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001) (citing 42 U.S.C. § 300aa-12(e)(2)(B) (1994); *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)).

### II.   Reasonable Basis

As an initial matter, two issues warrant clarification.  First, in remanding this matter to OSM, the Court neither predetermined nor preordained that Mr. Mead's counsel was entitled to an award of attorney's fees and costs.  On this point, the directive was clear:

On remand, the special master must assess whether the objective evidence in the record satisfied the minimal threshold for filing the petition *in the first instance*. And, *if so*, the special master must *then* determine the reimbursable reasonable attorney's fees and costs related to and commensurate with the May 6, 2019 filing . . . . *Assuming*

Mr. Mead meets this burden, the special master must *then* engage in a temporal assessment of counsel's continued due diligence in the zealous representation of her client . . . .

> *As with the filing of the petition, the Court leaves to the special master to determine at what specific moment in this litigation counsel failed to comport with her obligations to the Court and her client.*

*Mead*, 170 Fed. Cl. at 440 (emphasis added).  If, on remand, OSM determined the petition fell short of the minimal threshold for initiating a viable Vaccine Act claim, the inquiry would necessarily end, and no award of attorney's fees and costs would be warranted.[4]  Accordingly, OSM's statements and suggestions to the contrary are in error.  *See, e.g.*, ECF 94 at 16 ("An award of no compensation for [Mr. Mead's counsel] would be inconsistent with the Court's Opinion and Order."), 26 ("[T]he Court has questioned whether an 'all or nothing' approach to attorney['s] fees is appropriate.  As such, Mr. Mead is awarded a reasonable amount of attorney's fees and costs, an amount that is neither 'all' nor 'nothing.'"), 34 ("The Court's Opinion and Order suggested neither 'all fees and costs' nor 'no fees and costs' were an appropriate outcome.").

Second, the Court's passing reference to the impending expiration of the statute of limitations was intended simply to explain the *timing* of the May 6, 2019 filing.  *See Mead*, 170 Fed. Cl. at 439–40 ("It is also worth highlighting that Mr. Mead's petition was filed just ten days before the expiration of the thirty-six month statute of limitations for vaccine claims." (citing 42 U.S.C. § 300aa-16(a)(2))).  It was not offered to reinforce the objective evidence of the underlying merits of the vaccine injury claim in contravention of binding precedent.  *See Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017) ("Whether there is a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition."), *cited in Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1342 (Fed. Cir. 2020).  To the extent OSM misconstrued the import of this sentence, it is error.[5]

Turning to the relative merit of Mr. Mead's May 6, 2019 petition, the Court finds that reasonable basis for the Vaccine Act claim existed when the petition was

---

[4] Indeed, it was the methodology employed by OSM–not the decision reached–that prompted the Court to vacate the original decision and remand the matter for further proceedings.  Put simply, OSM seemingly denied the application for attorney's fees and costs based upon the ultimate outcome of the case rather than, as explained, a temporal assessment of the relative merit of the underlying petition at filing and, as appropriate, throughout the legal proceedings.

[5] The special master innocuously quotes an excerpt of the contested sentence in relating the procedural history of the case.  ECF 94 at 9.  The troubling reference lies in OSM's second reference to the expiring statute of limitations–in analyzing reasonable basis–explaining that not filing a petition would foreclose the recovery of attorney's fees and costs.  *See id* at 16.

filed.  The objective evidence presented, documented in the medical records and related court filings, include the following.  M.M. received a dose of the meningococcal vaccine and began suffering increased physical ailments shortly thereafter.  The next day, M.M.'s pediatrician linked his reported symptoms to the vaccine.  Within seventy-two hours, his condition reportedly worsened and was so concerning that M.M.'s parents brought him to the hospital.  The treating physician similarly pointed to the vaccine as the likely cause of M.M.'s reported symptoms.  A pediatric neurologist examining M.M. a month later noted among his impressions: "Reaction to vaccine meningococcal (5/16)."  ECF 11-3 at 1.  The petition then details over two years of M.M.'s medical appointments with neurologists and other physicians to treat reported numbness, back pain, nerve damage, and loss of ambulatory and manual dexterity—all symptoms of CIDP.[6]  The petition further cites an October 18, 2017 "formal diagnosis of chronic inflammatory demyelinating polyneuritis [(CIDP)] prior to being prescribed treatment with [G]abapentin for that condition."[7]  ECF 1 at 2 (citing ECF 11-7 at 3).

The foregoing demonstrates "more than a mere scintilla" of objective evidence to establish a reasonable basis for the underlying Vaccine Act claim upon filing the initial petition, thereby satisfying the statutory threshold for the discretionary award of reasonable attorney's fees and litigation expenses under 42 U.S.C. § 300aa-15(e)(1).  *See Cottingham*, 971 F.3d at 1345–46.  M.M. received a meningococcal vaccine and thereafter reportedly developed systems consistent with CIDP.  He was later diagnosed with and reportedly treated for CIDP, and his examining and treating physicians attributed his symptoms and eventual diagnosis to the meningococcal vaccine.  That the special master ultimately concluded that Mr. Mead failed to present minimally competent evidence establishing the claimed diagnosis as well as a plausible temporal relationship between the vaccine and CIDP does not automatically upend the foundation of the original petition.  *See James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("[The] absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts.").

Over the course of a year and a half after filing the petition, disrupted by the COVID-19 pandemic, Mr. Mead continued filing medical and school records.  The supplemental documents intermittently filed through October 2020 were generally consistent with the allegations in the petition.  However, reasonable basis faded when petitioner received Dr. Yehuda Shoenfeld, M.D.'s January 6, 2021 expert report.  As made clear by the special master immediately upon filing–and throughout the

---

[6] *See* https://perma.cc/LET4-AEJS (last visited Aug. 19, 2024) (Cleveland Clinic website on CIDP).

[7] *See* MOULOOD RAYANI ET AL., *Gabapentin versus Pregabalin for management of chronic inflammatory demyelinating polyradiculoneuropathy*, AM. J. NEURODEGENER DIS. (Aug. 15, 2021), *available at* https://perma.cc/9BGB-4HDR (last visited Aug. 19, 2024).

balance of the entitlement proceedings–the proffered expert report undermined the claimed CIDP diagnosis and failed to present a plausible temporal relationship between the vaccine and CIDP.[8]   These shortcomings confirmed respondent's January 28, 2020 preliminary (and consistent) challenges to entitlement.  Mr. Mead's efforts to resuscitate the underlying merits of his petition after January 12, 2021, were an exercise in futility.  *See, e.g.*, ECF 94 at 21–25 (discussing omissions of material information, failures to explain conclusions, insufficiencies and deficiencies, significant flaws, and serial problems with supplemental expert reports), 24 ("Dr. [Avinoam] Shuper's opinion, in some ways, made Mr. Mead's case worse than before it was submitted."), 25 ("If anything, Dr. Shoenfeld's third report makes Mr. Mead's case worse.").

At bottom, there is no basis in fact or law to award attorney's fees and costs in this case relating to the entitlement proceedings after January 12, 2021 (i.e., the date in counsel's billing records reflecting her review of Dr. Shoenfeld's initial report).  Despite OSM's suggestion that "all hope was not lost" following receipt of the report, *id.* at 21, reasonable basis *was*.  OSM thus erred in finding reasonable basis for petitioner's claim after this date.  This conclusion is consistent with respondent's alternative argument on remand.

## III.   Attorney's Fees and Costs

Reasonable attorney's fees under the Vaccine Act are calculated using the lodestar approach: multiplying a reasonable hourly rate by a reasonable number of expended hours.  *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  In performing this calculation, courts generally exclude hours deemed "excessive, redundant, or otherwise unnecessary."  *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)).  The award of expert witness fees employs a similar approach.  *Caves v. Sec'y of Health & Hum. Servs.*, 111 Fed. Cl. 774, 779 (2013) (collecting cases).  Courts consider several factors in assessing the reasonableness of an expert's charged fees, including "'the nature, quality, and complexity of the information provided.'"  *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 206 (2009) (quoting *Baker v. Sec'y of Dep't of Health & Hum. Servs.*, No. 99-653, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005) (citation omitted)).

In determining the reasonable hourly rates to be awarded, the special master compared counsel's requested rate with the OSM Hourly Rate Fee Schedule for 2019 to 2024 and the rates awarded to counsel in prior Vaccine Act cases.  The net effect reduced the range from $405 to $564 requested by counsel to $365 to $480 awarded

---

[8] Dr. Shoenfeld's report focused on a Guillain-Barré Syndrome (GBS) diagnosis and failed to account for or otherwise explain the immediate onset of M.M.'s symptoms which is inconsistent with his own notes on CIDP diagnoses.

by the special master.  Declining to award the requested maximum rates included in the fee schedules, the special master credibly explained that counsel's history of attorney's fees awards and the quality of her work justified an hourly rate at the middle to lower end of the annual scales.[9]  In turn, the special master found the proposed hourly paralegal rates–ranging from $156 in 2019 to $197 in 2024–reasonable.  The hourly rates determined by the special master are reasonable and thus adopted.

With respect to the number of reasonable hours, as explained above, the reasonable basis for pursuing entitlement ended on January 12, 2021.  According to the billing records submitted, counsel logged 58.39 "attorney" hours and an additional 17.35 hours of "paralegal" work as of that date.[10]  The special master also awarded attorney's fees for the nearly fifty-eight hours attributed to the motion for review and remand proceedings between 2023 and 2024.[11]  However, petitioner's persistent pursuit of unreasonable hourly rates, billed hours, and costs merits a fifty percent reduction in the number of hours attributed to this endeavor.  *See, e.g.*, *Arnold v. United States*, 163 Fed. Cl. 13, 32–37, 39–40 (2022) (reductions in hours for unsuccessful claims and wasteful effort; excessive, redundant, and unnecessary hours; and minimal success), *appeal dismissed sub nom.* Nos. 23-1923, -1927, -1971, 2023 WL 5286460 (Fed. Cir. Aug. 17, 2023).

Turning to the reimbursement of expert witness costs, OSM properly reduced the amount requested for Dr. Shoenfeld's January 6, 2021 report, citing "poor performance."  ECF 94 at 31.  Specifically, the special master reduced the claimed hourly rate (from $500 to $200) as well as the number of hours billed (from 20 to 18) in generating the "flawed" report and inadequately documenting his time.[12]  *Id.* at 32.  The special master's reimbursement of $3,600 for this claimed cost is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  With reasonable

[9] Indeed, the special master awarded counsel the exact 2019 through 2022 hourly rates she has been awarded on at least two prior occasions.  *See Chavez v. Sec'y of Health & Hum. Servs.*, No. 16-1479, 2023 WL 6461956, at *2 (Fed. Cl. Spec. Mstr. Aug. 30, 2023) ($365 in 2019, $378 in 2020, $400 in 2021, and $422 in 2022); *Bohn v. Sec'y of Health & Hum. Servs.*, No. 16-265, 2023 WL 2364831 (Fed. Cl. Spec. Mstr. Mar. 6, 2023) (same).

[10] These calculations account for modest reallocations of attorney to paralegal work and reductions for time spent on general administrative and clerical tasks.  The Court additionally notes that counsel billed an attorney hour at $405 on November 6, 2020, which was not the rate she billed other attorney hours in 2020.  The Court nevertheless includes this additional hour in its "attorney" hours count and applied the $378 hourly rate.

[11] Specifically, the special master accounted for 26.69 attorney hours in 2023 and 25.3 attorney hours and an additional 6 paralegal hours in 2024.  The aggregate 57.99 hours includes a .05 hour deduction for duplicate efforts.

[12] In further support of the reduction in hours, the special master cited previous instances where Dr. Shoenfeld was formally admonished for his insufficient timekeeping practices.

- 7 -

basis extinguished after the submission of Dr. Shoenfeld's initial report, reimbursement for his and Dr. Shuper's later efforts is axiomatically inappropriate.

The Court accordingly awards petitioner reasonable attorney's fees and costs in the total amount of $41,044.29:

| Attorney's Fees and Costs | Award |
|---|---|
| Entitlement Phase | $24,376.04 |
| Motion for Review and Remand Proceedings | $12,668.25 |
| Dr. Shoenfeld | $3,600.00 |
| Dr. Shuper | N/A |
| Filing Fee | $400.00 |
| **Total** | **$41,044.29** |

## CONCLUSION

For the foregoing reasons, respondent's motion for review (ECF 95) is GRANTED-IN-PART and DENIED-IN-PART, petitioner's cross-motion for review (ECF 97) is DENIED, OSM's remand decision awarding attorney's fees and costs (ECF 94) is AFFIRMED-IN-PART and VACATED-IN-PART, and petitioner is AWARDED $41,044.29 in reasonable attorney's fees and costs.[13]  The Clerk of Court is directed to ENTER judgment accordingly.

It is so **ORDERED**.

Armando O. Bonilla
Judge

---

[13] No additional attorney's fees are warranted for litigating the cross-motions for review which are the subject of this opinion.